UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CURTIS S.,<br><br>                       Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                       Defendant. | Case No. 22-cv-11799<br>Honorable Nancy G. Edmunds<br>Magistrate Judge Elizabeth A. Stafford |

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF NOS. 11, 13)**

## I.   Introduction

Plaintiff Curtis S. appeals the final decision of defendant Commissioner of Social Security (Commissioner), which denied his application for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). ECF No. 11; ECF No. 13. After review of the record, the Court **RECOMMENDS** that:

- Plaintiff's motion (ECF No. 11) be **DENIED**;

- the Commissioner's motion (ECF No. 13) be **GRANTED**; and

- the ALJ's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

## II. Background

### A. Plaintiff's Background and Disability Application

Born in May 1984, plaintiff was 35 years old when he applied for DIB and SSI in March 2020, with an alleged disability onset date of May 31, 2019.  ECF No. 8-2, PageID.44, 59.  He had past relevant work as a boat operator/helper, hand packager, wood working machine feeder, and small product assembler.  *Id.*, PageID.58.  Plaintiff claimed disability from bipolar disorder, severe mood swings, and several physical impairments.[1]  ECF No. 8-3, PageID.141.

After a hearing, during which plaintiff and a vocational expert (VE) testified, the ALJ found plaintiff not disabled.  ECF No. 8-2, PageID.44, 60.  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  *Id.*, PageID.28.  Plaintiff timely filed for judicial review.  ECF No. 1.

---

[1] Plaintiff does not dispute the ALJ's determinations about his physical impairments.

2

## B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the

---

[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).

claimant's RFC, age, education, and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that plaintiff was not disabled. At the first step, she found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 31, 2019. ECF No. 8-2, PageID.47. At the second step, she found that plaintiff had the severe impairments of attention deficit hyperactivity disorder, adjustment disorder with depressed mood, generalized anxiety disorder, bipolar disorder, mild intellectual disorder, and several physical impairments. *Id.* Next, the ALJ concluded that none of plaintiff's impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. *Id.*, PageID.48-52.

Between the third and fourth steps, the ALJ found that plaintiff had the RFC to perform a reduced range of sedentary work with these mental limitations:

> [Plaintiff] is able to understand and remember very short and simple oral instructions and is limited to simple routine and repetitive tasks but not at a production rate pace, for example no assembly line work. He is limited to no more than

4

occasional reading.  He can respond appropriately to occasional interaction with supervisors, coworkers, and the general public.  He is limited to tolerating few changes in the work setting, defined as routine job duties that remain static and are performed in a stable, predictable work setting.  Any necessary changes need to occur infrequently, and be adequately and easily explained.  He is limited to no more than occasional exposure to loud noise environments.  He is limited to jobs that may be taught by demonstration rather than him having to read written instructions.

*Id.*, PageID.52.  At step four, the ALJ found that plaintiff cannot perform any past relevant work.  *Id.*, PageID.58.  At the final step, after considering plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ determined that there were jobs in significant numbers that plaintiff could perform, including positions as a table worker, bench assembler, and weight tester.  *Id.*, PageID.59.

### III.   Analysis

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence[3] and conformed with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

---

[3] Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up). The substantial-evidence standard does not permit the Court to independently weigh the evidence. *Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 917, 930 (E.D. Tenn. 2013) ("The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion."); *see also Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) ("If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.").

Plaintiff argues that the Court should remand this matter, as (1) the RFC does not reflect the severity of his mental impairments and (2) the ALJ improperly evaluated the opinion of a consultative psychologist. ECF No.

11.  The Court disagrees and recommends that the ALJ's decision be affirmed.

## B.

Plaintiff argues that the RFC does not reflect the severity of his mental impairments.  ECF No. 11, PageID.979-983.  He maintains that greater restrictions are warranted, as he has more than moderate limitations in the "paragraph B criteria" of (1) understanding, remembering, or applying information and (2) concentration, persistence, or maintaining pace.  *Id.*

The ALJ found that plaintiff had moderate limitations in the disputed paragraph B criteria given his work history and activities of daily living. ECF No. 8-2, PageID.49-50, 52.  Despite his below-average intellectual functioning and full-scale IQ score of 69, plaintiff worked at several unskilled jobs, "suggesting that he was mentally able to perform at these jobs and that his mental impairment did not significantly affect his ability to perform work-related activities in the past."  *Id.*, PageID.52.  The ALJ also found no significant deficits in plaintiff's adaptive functioning or paragraph B criteria given his activities of daily living, including caring for his two minor children, tending to personal hygiene, driving, managing medications and

appointments, grocery shopping, cooking, and doing household chores. *Id.*, PageID.49-51, 53.

Substantial evidence supports the ALJ's reasoning.  Earnings records show that plaintiff made between $441.60 and $9,157.93 per year between 2011 and 2019, earning over $5,000 in six of those nine years.  ECF No. 8-5, PageID.433-437.  He testified that he has worked both part-time and full-time jobs.  ECF No. 8-2, PageID.75-81.  Plaintiff contends that he had only sporadic, brief stints of employment.  ECF No. 14, PageID.1009.  But it is uncontested that four of his jobs met the recency, duration, and earnings requirements to qualify as past relevant work.  ECF No. 8-2, PageID.58; *see also* 20 C.F.R. §§ 404.1560(b), 416.920(b).  And an ALJ may consider a claimant's work that is not substantial gainful activity when evaluating disability status.  *Miller v. Comm'r of Soc. Sec.*, 524 F. App'x 191, 194 (6th Cir. 2013) ("The ALJ did not err by considering Miller's ability to maintain part-time employment as one factor relevant to the determination of whether he was disabled."); *see also* 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did.").

Plaintiff also testified that he cares for his children (ages 7 and 16) every other weekend and that they play board games together, sit on the

porch, and go to the park.  ECF No. 8-2, PageID.73.  He stated that he drives short distances; tends to his personal hygiene, including showering independently; does some household chores like laundry, mopping, and sweeping; shares cooking duties with his roommate; and grocery shops with his roommate using an electric cart.  *Id.*, PageID.75, 89; ECF No. 8-7, PageID.919.  And plaintiff testified that he visits his mother every other weekend, goes fishing, and cares for a pet cat.  ECF No. 8-2, PageID.90.

Plaintiff disputes the ALJ's description of his activities of daily living, citing his testimony that he sometimes does not get dressed and forgets to shower, that his daughter is 16 years old, and that he only sits on the porch or drives to a park two blocks away to watch his children play.  ECF No. 11, PageID.982-983 (citing ECF No. 8-2, PageID.73, 90, 94).  While the ALJ did not expressly reference those statements, she was not required to discuss every piece of evidence in the record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006).  Nor was her summary of plaintiff's activities misleading.  Although plaintiff sometimes may not get dressed or forget to shower, the ALJ's statement that he could dress and bathe himself was consistent with his own report.  *See* ECF No. 8-2, PageID.51; ECF No. 8-7, PageID.919.  The ALJ also accurately stated that plaintiff takes his children to the park.  ECF No. 8-2, PageID.50, 53, 73.

And as described above, ample evidence supports plaintiff's ability to do other daily activities, including household chores, cooking, and grocery shopping.

Plaintiff contends that these basic activities do not show that he can sustain full-time work. ECF No. 11, PageID.981. The Sixth Circuit has warned that "somewhat minimal daily functions are not comparable to typical work activities." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248-49 (6th Cir. 2007). Yet "evidence of daily activities cannot be ignored," especially at step three when "mental disorders are in play." *Neal v. Comm'r of Soc. Sec.*, No. 18-10709, 2019 WL 2208555, at *11 (E.D. Mich. Jan. 31, 2019), *adopted*, 2019 WL 1306162 (E.D. Mich. Mar. 22, 2019). Thus, an ALJ does not err by considering daily activities when other evidence also supports an ability to work. *Id.* at *12 ("The ALJ did not rely solely on daily activities, however. More importantly, she correctly observed that the objective evidence does not support Plaintiff's claims, which are consequently based on subjective complaints."). Contrary to plaintiff's argument that the ALJ failed to evaluate the evidence holistically, she considered more than just plaintiff's daily activities. *See* ECF No. 14,

PageID.1010-1011. The ALJ also evaluated his treatment records and a state-agency reviewing psychologist's opinion.[4]

When analyzing the RFC, the ALJ noted that plaintiff's mental health treatment was limited to visits with his primary care provider and that his symptoms were well managed with medication. ECF No. 8-2, PageID.56-58. She also considered plaintiff's low IQ scores and an opinion from state agency reviewing physician Mark Garner, Ph.D. *Id.* To accommodate his mental impairments, the ALJ found that plaintiff was limited to understanding and remembering very short, simple oral instructions; simple, routine, repetitive tasks but not at a production rate pace; occasional reading; occasional interaction with supervisors, coworkers, and the public; few changes in the work setting and routine job duties; and jobs that can be taught by demonstration instead of with written instructions. *Id.*, PageID.57.

Again, substantial evidence supports the ALJ's rationale. Plaintiff admitted that his mental health treatment was limited to visits with his primary care provider, Marissa Callicotte, P.A. ECF No. 8-2, PageID.86.

---

[4] Plaintiff argues that his daily activities are not as robust as the plaintiff's in *Neal*. ECF No. 14, PageID.1011. But the Court relies on that case for its explanation of how daily activities are to be evaluated and does not compare plaintiff's activities to Neal's. As discussed below, evidence beyond plaintiff's daily activities supports the ALJ's analysis.

11

Plaintiff reported to Callicotte in November 2019 that he felt depressed, and she diagnosed adjustment disorder with depressed mood and prescribed citalopram. ECF No. 8-7, PageID.883-885. In December 2019, plaintiff complained of increased anxiety, but Callicotte continued the citalopram. *Id.*, PageID.878-879. In February 2020, plaintiff again complained of anxiety, and Callicotte prescribed Wellbutrin instead of citalopram. *Id.*, PageID.870-871. When plaintiff returned to see Callicotte in April 2020, he reported "good success" with Wellbutrin, stating that he was "much better able to handle stress in his life." *Id.*, PageID.912. In July 2020, plaintiff reported that he was doing well on his medications and denied any side effects. *Id.*, PageID.908. Other medical records show that plaintiff went to the emergency department for physical complaints, but that neurological and mental status examination findings were benign. *Id.*, PageID.655, 661, 673, 678, 681, 930, 935.

The ALJ also considered Dr. Garner's opinion. Dr. Garner found that plaintiff had moderate limitations in all four paragraph B criteria. ECF No. 8-3, PageID.184. He considered plaintiff's IQ scores but found that he could complete simple, routine tasks and understand, remember, and carry out very short, simple instructions. *Id.*, PageID.184-185, 189-191. Dr. Garner also stated that plaintiff had moderate limitations in maintaining

attention, concentration, persistence, and pace over extended periods of time; interacting appropriately with the public; and responding appropriately to change. *Id.* The ALJ found this opinion partially persuasive and adopted the suggested limitations along with other more specific functional limitations. ECF No. 8-2, PageID.57. Courts have routinely found RFC assessments that are more restrictive than the opinion evidence to be supported by substantial evidence. *See, e.g.*, *Drinkwine v. Comm'r of Soc. Sec.*, No. 18-12327, 2019 WL 4866144, at *3 (E.D. Mich. Aug. 8, 2019), *adopted*, 2019 WL 4626674 (E.D. Mich. Sept. 24, 2019).

Thus, the ALJ's findings on the paragraph B criteria and RFC are supported by substantial evidence.

## C.

Plaintiff next argues that the ALJ improperly evaluated an opinion from consultative psychologist Mitchell Solomon, Ph.D. ECF No. 11, PageID.969-978. He maintains that the ALJ's rationale for discounting the opinion was unsupported by substantial evidence and that the ALJ failed to address whether the opinion was supportable and consistent with the record. *Id.*

ALJs must explain the persuasiveness of all opinions from both treating and non-treating sources by considering several factors. 20 C.F.R.

§§ 404.1520c(b)(2), 416.920c(a). "But the regulations only require ALJs to discuss the first two—supportability and consistency." *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 905 (E.D. Mich. 2021). Under the supportability factor, the more relevant "objective medical evidence and supporting explanations presented by a medical source to support his or her medical opinion," the more persuasive the medical opinion will be. §§ 404.1520c(c)(1), 416.920c(c)(1). An opinion that is more consistent with the evidence from other medical sources and nonmedical sources is also more persuasive. §§ 404.1520c(c)(2), 416.920c(c)(2).

Dr. Solomon evaluated plaintiff in April 2017 and administered an intelligence test. ECF No. 8-7, PageID.585-587. Plaintiff's full-scale IQ score was 69, meaning his overall cognitive functioning was in the extremely low range, more than two standard deviations below the mean for his age. *Id.*, PageID.587. Dr. Solomon stated that plaintiff's performance reflected a mild intellectual disability and that plaintiff would have trouble "with adaptive skills that require judgment, abstract thinking, planning, organizing and nonverbal and verbal problem-solving as well as comprehension." *Id.* But Dr. Solomon found that plaintiff could perform "work that involves following simple, verbal, single-step instructions with hands-on demonstration and consistent supervision." *Id.* The ALJ

accepted the IQ score but found Dr. Solomon's opinion about functional limitations unpersuasive. ECF No. 8-2, PageID.52, 56. Noting that Dr. Solomon saw plaintiff two years before the alleged onset date, she concluded that his opinion was not relevant to the period at issue. *Id.*, PageID.56.[5]

Plaintiff challenges the ALJ's rationale, arguing that "[t]he fact that IQ testing was performed two years prior to [plaintiff's] alleged onset date does not render this opinion outdated as an individual's IQ remains constant throughout one's life." ECF No. 11, PageID.973. It is true that "IQ tests create a rebuttable presumption of a fairly constant IQ throughout a claimant's life absent evidence of sudden trauma that can cause retardation." *Davis v. Comm'r of Soc. Sec.*, No. 08-12528, 2009 WL 348562, at *2 (E.D. Mich. Feb. 10, 2009) (cleaned up); *see also Williams v. Mitchell*, 792 F.3d 606, 620 n.4 (6th Cir. 2015); *McPeek v. Sec'y of Health & Human Servs.*, 19 F.3d 19 (Table) (6th Cir. 1994).

---

[5] The Commissioner argues that res judicata applies because Dr. Solomon's opinion was considered in a 2018 decision denying a prior disability application. ECF No. 13, PageID.995. While the Commissioner cites plaintiff's brief from the administrative proceedings, that brief describes Dr. Solomon's opinion as "new and material evidence." ECF No. 8-6, PageID.527. Although Dr. Solomon completed the opinion in 2017, it is unclear whether it was part of the earlier record or whether the previous ALJ considered it since the 2018 decision is not in the administrative record.

But the ALJ accepted Dr. Solomon's IQ findings. ECF No. 8-2, PageID.52, 56. She rejected only Dr. Solomon's functional assessment, which is distinct from his opinion about plaintiff's IQ. *See Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 540 (6th Cir. 2014) ("Adaptive functioning is different from intellectual functioning." (cleaned up)); *Talavera v. Astrue*, 697 F.3d 145, 153 (2d Cir. 2012) ("While a qualifying IQ score may be *prima facie* evidence that an applicant suffers from significantly subaverage general intellectual functioning, there is no necessary connection between an applicant's IQ scores and her relative adaptive functioning." (cleaned up)). Plaintiff cites no authority that a functional assessment is presumed to remain constant. Thus, the ALJ did not err by rejecting Dr. Solomon's opinion, as evidence predating the alleged onset date is "minimally probative" unless it reflects the claimant's limitations during the period at issue. *See Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849-50 (6th Cir. 2020).

Although the ALJ here did not use the terms "supportability" and "consistency" when discussing Dr. Solomon's opinion, other parts of the decision show that she applied those factors. *See Hague v. Comm'r of Soc. Sec.*, No. 20-13084, 2022 WL 965027, at *4 (E.D. Mich. Mar. 30, 2022); *see also Zirker v. Comm'r of Soc. Sec.*, No. 21-12440, 2023 WL

16

2301998, at *3 (E.D. Mich. Mar. 1, 2023) (an ALJ's analysis "of the persuasiveness of a medical source opinion is not to be read in isolation of the rest of the decision" (cleaned up)). The ALJ credited Dr. Solomon's opinion about plaintiff's intellectual ability, as it was supported by the IQ testing. ECF No. 8-2, PageID.52. Despite that score, the ALJ found that the record did not show that plaintiff had significant functional limitations, citing his work history and daily activities. *Id.*, PageID.49-51, 53. As discussed above, substantial evidence supports those findings.

Plaintiff emphasizes that Dr. Solomon's opinion aligned with other evidence, including special education records and another consultative examiner's opinion from 2017. ECF No. 11, PageID.977-978. The ALJ acknowledged those records but still rejected Dr. Solomon's opinion for the reasons discussed. *See* ECF No. 8-2, PageID.49, 56. When, as here, the ALJ's decision is supported by substantial evidence, it "must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *See Cutlip*, 25 F.3d at 286. Thus, the ALJ did not err in analyzing Dr. Solomon's opinion.

## IV. Conclusion

The Court **RECOMMENDS** that plaintiff's motion for summary judgment (ECF No. 11) be **DENIED**, the Commissioner's motion for summary judgment (ECF No. 13) be **GRANTED**, and the ALJ's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford<br>
ELIZABETH A. STAFFORD<br>
United States Magistrate Judge

Dated: April 11, 2023

### NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*.*  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections lack merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 11, 2023.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
